986 F.2d 1429
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Virgil A. STEARNS; Donna M. Stearns, Plaintiffs-Appellees,
v.
PACCAR, INC., Defendant-Appellant.
 No. 91-1423.
 United States Court of Appeals, Tenth Circuit.
 Jan. 22, 1993.
 
 Before LOGAN, STEPHEN H. ANDERSON and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 BALDOCK, Circuit Judge.
 
 
 1
 Defendant Paccar, Inc. appeals the judgment following a jury verdict on this diversity case out of the United States District Court for the District of Colorado. Defendant alleges that there was insufficient evidence of Defendant's 100% liability, causation, and damages for impairment of future earning capacity. Defendant further alleges that the district court abused its discretion in admitting the deposition testimony of Defendant's employee Lois Davis and Plaintiff's testimony regarding the wages of other employee's of Plaintiff's employer. Plaintiffs seek Rule 38 sanctions, claiming Defendant's appeal is "frivolous." Fed.R.App.P. 38. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court judgment but deny Plaintiffs' request for sanctions.
 
 
 2
 On January 22, 1988, Plaintiff Virgil Stearns, an employee of Barlow Truck Lines, was driving a Peterbilt tractor-truck headed west on I-70 near Watkins, Colorado. As he crossed an overpass, he lost control of his steering, and his truck veered into the guardrail, went off an embankment, and turned over on its side. Plaintiff Virgil Stearns sustained a back injury as a result of the accident.
 
 
 3
 After the accident, inspection of the truck revealed that the pinch bolt which secured the pitman arm to the steering column was missing. Peterbilt Motor Company, a division of Paccar, manufactured the truck during the summer of 1987 in its Denton, Texas plant, and delivered the truck to Barlow Truck Lines in August of 1987. During the summer of 1987, Peterbilt experienced a shortage of the pinch bolts which it used to attach the pitman arm to the steering column in tractor-trucks such as Plaintiff's. Peterbilt's planner/buyer, Lois Davis, who was in charge of ensuring that Peterbilt had a sufficient supply of these pinch bolts, called one of Peterbilt's approved suppliers, Aircom Fasteners, to order more of the pinch bolts. An Aircom employee, who Ms. Davis dealt with on a regular basis, informed Ms. Davis that Aircom was out of the pinch bolts but that he would call around and attempt to locate the pinch bolts from another source. The Aircom employee located the pinch bolts at Porteous Fasteners and notified Ms. Davis that he would obtain a supply of the pinch bolts from Porteous and send them to Peterbilt.
 
 
 4
 Peterbilt had established quality control procedures to ensure that only high quality parts from approved suppliers were used in the manufacture of its trucks. To become an approved Peterbilt supplier, a company must pass Peterbilt's quality control inspection, during which Peterbilt's quality control department would inspect the company's facilities and quality assurance procedures. However, Peterbilt's established quality control procedures failed in this instance when the approved supplier, Aircom, obtained the pinch bolts from a supplier that had not been approved, Porteous, and sent them to Peterbilt in Aircom packaging. In fact, the record reflected that if Peterbilt had received the pinch bolts directly from Porteous in Porteous packaging, the receiving department, following standard procedure, would have rejected them because Porteous was not an approved supplier.
 
 
 5
 After installation of these pinch bolts in the trucks, Peterbilt discovered that a large number of the pinch bolts were defective.[1] One of these pinch bolts, received from Porteous through Aircom and later discovered to be manufactured by Kosaka Koygo, found its way into Plaintiff Virgil Stearns' truck. Although the pinch bolt that was missing from Plaintiff's steering column was never found, it was determined by using the serial number of Plaintiff's truck that the truck was manufactured during the short time period when Peterbilt installed the defective bolts received from Porteous through Aircom.
 
 
 6
 Plaintiffs proceeded to trial against Paccar on a theory of negligence, claiming that Paccar breached its duty to independently inspect its pitman arm pinch bolts. Plaintiffs Virgil Stearns and his wife, Donna Stearns, sued Paccar for compensatory damages and loss of consortium suffered by Mrs. Stearns'. Paccar asserted an affirmative defense in accordance with Colorado's Proportionate Fault Statute, Colo.Rev.Stat. § 13-21-111.5, designating Aircom, Porteous, and Kosaka Koygo as non-parties whom Paccar felt should bear a portion of the responsibility for Plaintiffs' injuries due to their negligence. At trial, however, Paccar introduced little evidence that these three non-parties were negligent, relying only on Plaintiffs' evidence that the pinch bolt was defective. Although Paccar proved that Kosaka Koygo had the duty to inspect a certain number of bolts for every lot of bolts produced according to the industry standard, Paccar failed to prove that Kosaka Koygo breached this duty through non-compliance with the standard. Furthermore, Paccar introduced no evidence of either duty or breach with regard to Aircom and Porteous. Assuming without deciding that Paccar might have been able to prevail on a theory of strict liability by relying only on the fact that the pinch bolt was defective, Paccar did not argue its case on a strict liability theory nor did it propose a strict liability jury instruction. Therefore, the jury, when apportioning fault to Paccar and the three non-parties, found Paccar 100% at fault and the three non-parties to have no fault, burdening Paccar with Plaintiffs' entire $336,707.50 damage award.
 
 
 7
 Our review of the jury's determination that Paccar was 100% liable is a review for sufficiency of the evidence. Reazin v. Blue Cross & Blue Shield of Kansas, Inc., 899 F.2d 951, 955 (10th Cir.), cert. denied, 497 U.S. 1005 (1990). We will only overturn a jury's verdict if we find that no reasonable jury could have reached such a verdict based on the evidence presented. Acrey v. American Sheep Industry Ass'n, 1992 WL 384930, at * 5 (10th Cir. Dec. 29, 1992). We find that there was sufficient evidence from which the jury could have found Paccar 100% liable.
 
 
 8
 Plaintiff presented evidence that Paccar's subsidiary, Peterbilt, had established certain procedures to ensure that it used high quality component parts. Plaintiffs' evidence established that these procedures were circumvented by Peterbilt's planner/buyer, Lois Davis, who obtained pinch bolts from Porteous, a supplier who had not been approved by Peterbilt, by ordering them through Aircom, an approved supplier. This evidence alone is sufficient for a reasonable jury to find Paccar 100% at fault. Moreover, in light of Paccar's failure to establish the negligence of the non-party defendants--Aircom, Porteous, and Kosaka Koygo--we have little trouble finding sufficient evidence to hold Paccar 100% liable.
 
 
 9
 Our review of whether Plaintiffs adequately established causation is also one of sufficiency of the evidence. Reazin, 899 F.2d at 954. In order for Plaintiffs to recover from Defendants on a negligence theory, Plaintiffs were required to demonstrate that Defendant owed them a duty, that Defendants breached that duty, and that the breach of the duty caused Plaintiffs to suffer damages. Schultz v. Linden-Alimak, Inc., 734 P.2d 146, 149 (Colo.App.1986). Defendant Paccar asserts that Plaintiffs failed to establish the third negligence prong, i.e., that Defendant's breach caused the accident and resulting injuries.
 
 
 10
 Paccar appears to argue that because Plaintiffs' expert did not examine the actual pinch bolt from Plaintiff's truck for defects, Plaintiffs failed to establish causation. However, it is obvious that Plaintiffs' expert could not examine the pinch bolt which had been installed in Plaintiff's truck, because the pinch bolt, had come loose and fallen out, causing the accident, and could not be found at the time of the accident. What Paccar fails to acknowledge, however, is that Plaintiffs can submit evidence other than examination of the missing bolt to establish causation, which Plaintiffs unquestionably did.
 
 
 11
 Plaintiffs submitted evidence that the accident was caused when the pitman arm became disconnected from the steering column, resulting in Plaintiff's total loss of steering. Plaintiffs also submitted evidence that a number of pinch bolts received from Porteous through Aircom, which were placed in trucks during the short time period when Plaintiff's truck was assembled, had pre-existing cracks, making them defective. Plaintiffs introduced expert testimony that the pinch bolt had not been manually removed but had fallen out, relying on the fact that the paint surrounding the pinch bolt was not marred in any way. This same expert further testified that because the pinch bolt had fallen out less than a year after the truck's manufacture, it was likely that the pinch bolt was defective. This unrebutted evidence was sufficient for the jury to find that a defective pinch bolt had caused the accident.
 
 
 12
 Defendant further objects to the jury's damage verdict, arguing that Plaintiffs presented insufficient evidence to support the portion of the jury's damage award designated as Plaintiff Virgil Stearns' impairment of future earning capacity. However, we find that there was sufficient evidence from which the jury could determine this portion of the damage award.
 
 
 13
 Paccar primarily argues that because Plaintiff only offered evidence of the amount of money he made prior to the accident and offered no evidence of the amount he made after the accident, the jury's damage award with regard to impairment of future earning capacity was based on speculation. Contrary to this assertion, however, the amount of money that Plaintiff made prior to the accident is more relevant than the amount he has made after the accident because the record reflected that the accident affected the amount of trips he can make, thus affecting his total earnings. Furthermore, under Colorado law, evidence of permanent disability alone warrants an instruction regarding impairment of future earning capacity, see Zertuche v. Montgomery Ward & Co., Inc., 706 P.2d 424, 428 (Colo.App.1985); Phillips v. Monarch Recreation Corp., 668 P.2d 982, 987 (Colo.App.1983), and the record reflects that Plaintiffs presented evidence of permanent disability. Two medical doctors and a chiropractor testified that Plaintiff's injury was likely to have a negative impact on Plaintiff's future work life. One of the medical doctors, who was Plaintiff's physician, testified that Plaintiff has sustained a fifteen percent partial impairment, and the chiropractor testified that Plaintiff would probably require additional medical treatment in the future.
 
 
 14
 Paccar's assertion that the district court erred in allowing Lois Davis' deposition testimony to be read at trial is reviewed for an abuse of discretion. Graham v. Wyeth Laboratories, 906 F.2d 1399, 1401 (10th Cir.), cert. denied, 111 S.Ct. 511 (1990). A party seeking reversal of a district court judgment on account of an evidentiary ruling must make a clear showing that he or she was prejudiced by the ruling in that the ruling was "inconsistent with substantial justice" or affected the substantial rights of the party. 28 U.S.C. § 2111; Fed.R.Civ.P. 61; Fed.R.Evid. 103(a); Neu v. Grant, 548 F.2d 281, 286 (10th Cir.1977).
 
 
 15
 "The deposition of a party or of anyone who at the time of taking the deposition was an officer, director or managing agent ... may be used by an adverse party for any purpose." Fed.R.Civ.P. 32(a)(2). Although Ms. Davis was neither an officer nor a director, the district court designated her a "managing agent" and admitted her deposition under Rule 32(a)(2).[2] Factors considered by the federal courts in determining whether an individual is a "managing agent" under Rule 32(a)(2) are whether the agent's interests are identified with those of the principal, the nature and extent of the agent's functions, responsibilities and duties, the extent of the agent's power to exercise judgment and discretion, and whether any person or persons higher in authority than deponent were in charge of the particular matter or possessed all of the necessary information sought in the deposition. See Crimm v. Missouri P.R. Co., 750 F.2d 703, 708-09 (8th Cir.1984); Terry v. Modern Woodmen of America, 57 F.R.D. 141, 143 (D.Mo.1972); Tomingas v. Douglas Aircraft Co., 45 F.R.D. 94, 96 (S.D.N.Y.1968). At the time of her deposition, Ms. Davis was accompanied by Paccar counsel, who made deposition objections with only Paccar's interests in mind. The record reflects that Ms. Davis' had a managerial role in fastener acquisition, in that she had absolute discretionary control over which approved supplier she would contact to order a specific fastener. She was not required to report to her supervisors the specifics of her fastener acquisitions, but only that she had located the fasteners. Ms. Davis unquestionably exercised her judgment and discretion in this case, resulting in the circumvention of established quality control procedures. Finally, it is clear from the record that Ms. Davis was the only person at Peterbilt who possessed all of the critical information which was sought in the deposition. Thus, it was not an abuse of discretion for the district court to admit Ms. Davis' deposition as the deposition of a "managing agent." Even if the district court's admission of the Davis deposition was erroneous, Paccar would be unable to show that it was prejudiced by the ruling, especially considering that Paccar called Ms. Davis as a defense witness and had every opportunity to contradict or explain Ms. Davis' deposition testimony.
 
 
 16
 Defendant Paccar is correct in its assertion that Plaintiff's testimony regarding what he had seen on the W-2 forms of other Barlow Truck Line employees was inadmissible hearsay. Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Plaintiff offered the written statement, i.e., the W-2 forms, to prove the truth of the matter asserted, i.e., that other employees at Barlow made between $28,000 and $32,000 per year. Therefore, the testimony constituted hearsay. See Stanolind Oil & Gas Co. v. Sellers, 174 F.2d 948, 956-57 (10th Cir.), cert. denied, 338 U.S. 867 (1949) (because witness had no personal knowledge of the oil field at issue but relied only on scientific articles written about the oil field, his testimony as to the contents of the scientific articles was inadmissible hearsay).
 
 
 17
 Plaintiff's hearsay testimony does not fall under any exception to the hearsay rule. The closest possibility is the business records exception, Fed.R.Evid. 803(6), but that exception requires presentation of the document with testimony by the document's custodian that the document was kept in the ordinary course of business. Therefore, in order to admit evidence regarding the W-2 forms of other Barlow employees, Plaintiffs were required to submit the W-2 forms to the district court through Barlow's records custodian.
 
 
 18
 Although Plaintiff's testimony regarding the W-2 forms was inadmissible hearsay, it is not prejudicial error to admit evidence which is merely cumulative or corroborative of other evidence. Hirschfeld v. New Mexico Corrections Dept., 916 F.2d 572, 581 n. 10 (10th Cir.1990). To show the income lost by Plaintiff Virgil Stearns during the thirteen months that he was out of work because of his back injury, Plaintiffs submitted two types of evidence. First, Plaintiffs submitted evidence, which we have ruled inadmissible, that Plaintiff Virgil Stearns had seen the W-2 forms of other Barlow employees and that these forms reflected that his one-year earning potential was between $28,000 and $32,000 a year. Second, Plaintiff Virgil Stearns testified that prior to the accident he made $800 to $900 a week working on a regular basis, which is approximately $40,000 a year. Therefore, Plaintiff's inadmissible hearsay testimony is cumulative of his admissible weekly earnings testimony, and the district court's erroneous admission of the testimony regarding the W-2 forms was harmless.
 
 
 19
 Plaintiffs' request for Rule 38 sanctions for delay caused by a frivolous appeal is denied. An appeal is frivolous if the result is obvious, or the arguments of error are wholly without merit. Autorama Corp. v. Stewart, 802 F.2d 1284, 1288 (10th Cir.1986). We hold that Defendant's appeal does not rise to this level.[3]
 
 
 20
 The district court's judgment is AFFIRMED, and Plaintiffs' motion for Rule 38 sanctions against Defendant is DENIED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 It is unclear from the record whether Peterbilt was aware that the pinch bolts were defective prior to Plaintiff's accident
 
 
 [2]
 Deposition testimony admitted under Rule 32(a)(2) is not hearsay because it is considered an admission by party-opponent. Fed.R.Evid. 801(d)(2)
 
 
 [3]
 Although the appeal is not frivolous, we wish to admonish Defendant Paccar for its submission of an incomplete and cursory appendix. Pursuant to Tenth Circuit Rule 30.1, an appellant is permitted to file an appendix, containing excerpts of the record, instead of filing the entire record. "It is the responsibility of appellant's counsel to file an appendix sufficient for the consideration and determination of the issues on appeal." 10th Cir.R. 30.1.1. "It is the appellant's responsibility to order and provide all portions of the transcript necessary to give the court of appeals a complete and accurate record of the proceedings insofar as such proceedings relate to the issues raised on appeal, and when sufficiency of the evidence is raised, the entire trial transcript ordinarily should be provided." 10th Cir.R. 10.1.1. Appellant made three sufficiency of the evidence challenges, but provided only a very abbreviated version of the transcript. We were only able to decide this case because Plaintiffs-Appellees filed a supplemental appendix