PHILLIPS, Circuit Judge,
dissenting:
I respectfully dissent. Because I believe that the district court erred in admitting hearsay testimony from FBI Agent Kent Smith to establish that Big Horn Federal Savings Bank (Big Horn Bank) and JPMorgan Chase Bank were FDIC insured, I would reverse and remand for a new trial.
The government’s case ended on, a strange and abrupt note. After appearing to have finished examining its final witness, Agent Smith, the government realized that it had overlooked an element of Iverson’s bank-fraud offense charged under 18 U.S.C. § 1344 — proof that the two banks were FDIC insured.. As Agent Smith prepared to step down from the witness stand, the government obtained the court’s permission to continue his direct examination. What followed was a short but critical evidentiary skirmish— with the government trying to establish the FDIC-insurance element through Agent Smith, and Iverson and his standby counsel objecting each step of the way.

1. Hearsay

After recognizing the urgent need to establish the FDIC-insurance element, the government resumed its questioning of Agent Smith by asking whether he had done “any research” to determine the FDIC-insurance status of Big Horn Bank and JPMorgan Chase. R. vol. Ill at 85. The agent answered yes, adding that Big Horn Bank was so insured. To this volunteered testimony, Iverson’s standby counsel successfully objected on foundation grounds. The government then circled back, asking what research Agent Smith had done. This time, Agent Smith answered that for JPMorgan Chase he had “pulled up the FDIC website and found their information and their certificate number,” and that for Big Horn Bank he had “been to that actual bank [and] requested a copy of their FDIC certificate which included their number.”[1] Id.
The government then asked — interspersed with hearsay objections — whether looking at the FDIC website was “a normal course of business to check to see if a bank is FDIC insured ... in your normal course of business as an FBI agent ...” Id. at 85-86. Although Iverson objected oh hearsay grounds, the government pressed forward without waiting for a ruling. After verifying that FBI agents “rely on those records to be accurate to determine if a bank is FDIC insured,” the government asked its key question: “Do you know if the banks of Big Horn Federal Savings and ... JPMorgan Chase are federally insured?” Id. at 86. This sparked another hearsay objection, which the district court overruled.[2] Agent Smith then said, ‘Yes, in my research both Big Horn Federal Savings. Bank and JPMorgan Chase bank are federally insured.” Id. Iverson chose not to cross-examine Agent Smith.
On appeal, Iverson contends that the district court abused its discretion by admitting Agent Smith’s FDIC-insurance *1035 testimony because that testimony depended on hearsay statements contained within the referenced FDIC certificate and. FDIC webpage. Primarily, Iverson’s argument rests on an undisputed fact — the government never admitted into .evidence either of the two FDIC records that the FBI agent relied on to prove the required FDIC-insurance element. Iverson contends that the district court permitted Agent Smith to introduce the hearsay statements by allowing him to testify about his memory of the two records’ contents. Thus, Iverson argues that the district court correspondingly deprived him of any ability to examine the written contents of the two records or to challenge their admissibility on hearsay grounds.
On appeal, the government confesses the hearsay error. In doing so, it explains its reasoning well:
[I]f a witness’s knowledge about a fact óf consequence is based only on the witness’s personal knowledge of an out-of-court statement offered to prove the truth of the fact asserted in that statement, then [the witness’s] testimony must comply with the hearsay rule; i.e., it must be allowed by a statute, an exception to the rules of evidence, or by a Supreme Court rule.
Appellee’s Br. at 9 (citing United States v. Gutierrez de Lopez, 761 F.3d 1123, 1132 (10th Cir.2014) (citing Fed.R.Evid. 602 advisory committee’s notes (1972))).
Along this same line, the government notes that “[i]n light of the foregoing rules, there can be little doubt that Special Agent Smith’s testimony about the insured status of the two banks was hearsay.” Id. at 10. First, the government says that Agent Smith relied on the FDIC certificate for Big Horn Bank — “clearly an ‘óut-of-court statement’ that ‘asserted’ the fact that Big Horn was insured.”[3] Id. Second, the government says that Agent Smith’s testimony about the FDIC webpage showing insurance coverage for JPMorgan Chase is no more than his saying, “I read it on the Internet.” Id. For these reasons, the government concedes that Agent Smith’s FDIC-insurance testimony lacked “the proper foundation from, for example, a records custodian from FDIC itself.” Id. at 11 (citing United States v. Cooper, 375 F.3d 1041, 1045-49 (10th Cir.2004)); see Cooper, 375 F.3d at 1045-49 (identifying various ways to prove FDIC insurance, including through an FDIC records custodian). Having identified the hearsay testimony, the government candidly acknowledges that it knows of no rule, statute, or exception to the hearsay rule permitting the district court to admit Agent Smith’s hearsay testimony on the FDIC-insurance element.
In my view, the government correctly concedes Iverson’s hearsay argument. Agent Smith based his FDIC-insurance testimony on out-of-court statements contained in records that the government never admitted at trial. The out-of-court statements Agent Smith relied on are hearsay — they are out-of-court statements “offer[ed] in evidence to prove the truth of the matter asserted in the statements].” Fed.R.Evid. 801(c). I see no reason for the government to elicit this testimony from Agent Smith other than to prove the FDIC-insurance element. ■ And without Agent Smith’s hearsay testimony, I see no other government proof that would even begin to prove this required element of the charged offense. .
So in my view, the majority errs by refusing the government’s concession of error. In doing so, it blesses an impermis *1036 sible, unprecedented shortcut through the Federal Rules of Evidence. Rather than requiring the government to admit the hearsay documents into evidence through Fed.R.Evid. 803(8), 902, and 1005, the majority brushes past — even ignores — the government’s obligations under these rules. In doing so, the majority deprives Iverson of the protections afforded to him by those rules, all while declaring the rules met without ever seeing the records that Agent Smith says established the FDIC-insurance element. In effect, the majority guesses that the government could have produced and admitted the records — a guess that somehow renders compliance with the Federal Rules of Evidence unnecessary.
As support for this remarkable course, the majority falls back on strings of cases standing for propositions undisputed here — first, that if the government proceeds correctly it can introduce FDIC certificates under hearsay-exceptions found in Fed.R.Evid. 803(6) and 803(8), Maj. Op. at 1019-20; second, that parties in civil suits may introduce certain public records such as county tax assessments, U.S. patent certificates, and drivers’ licenses under Fed.R.Evid. 803(8), Maj. Op. at 1020-21; third, that parties in civil suits can introduce as public records webpages from public agencies, id. at 1021-22; and, fourth, that courts may take judicial notice of webpages of public agencies, id. at 1021-22.[4]
My chief criticism of the majority is that it ignores the key point that the parties emphasizéd — the government failed to admit into evidence either of the two records.[5]. The majority steps .too far by assuming the existence of the unproduced records and them automatic admissibility. Even if a proponent seeking admission of a record . satisfies . Fed.R.Evid. 1005 — the best-evidence rule for public records^ — the rules would not relieve the proponent from also satisfying Rule 802. Thus, in my view, even if the government could have met Rule. 1005 here, it would still have needed, to admit into evidence the FDIC public records under Fed.R.Evid. 803(8) before Agent Smith could build FDIC-insurance testimony from hearsay statements within those FDIC records. See United States v. Ruffin, 575 F.2d 346, 355-56 (2d Cir.1978) (concluding that although a copy of an IRS public record would have *1037 been “otherwise admissible” under Fed. R.Evid. 1005, the record would still have been inadmissible as hearsay); cf. United States v. Johnson, 594 F.2d 1253, 1255-56 (9th Cir.1979) (requiring that separate, voluminous writings offered in a single summary under Fed.R.Evid. 1006 be indepen-r dently admissible). For good reason, the rules require a proponent of documentary-hearsay evidence to persuade the district court of the hearsay’s admissibility after considering any objections from the opponent.
The government doesn’t need us to ease its evidentiary burdens. Nothing- in the rules blocks the government’s clear path to admitting FDIC certificates to prove that financial institutions aré FDIC insured. See Cooper, 375 F.3d at 1048 (outlining ways the government can ádmit an FDIC certificate to satisfy the FDIC-insurance element). The government, might well succeed by, simply bringing an FDIC certificate to court together with a knowledgeable witness who could testify about the bank’s FDIC-insurance status. See United States v. Brunson, 907 F.2d 117, 119 (10th Cir.1990) (concluding that a bank manager’s testimony — along with the FDIC certificate — sufficiently proved the FDIC-insurance element). Rule 803(8) is a blinking neon sign promising hospitality to litigators seeking admission of public records. But the rules of evidence afford a party opposing the admission of public records — such as the FDIC certificate and FDIC webpage here — the opportunity to challenge relevancy, trustworthiness,' and authenticity of the proffered record. Fed.R.Evid. 803(8), 902. Our task here is a modest one — to enforce the rules.
In my view, the majority’s judicial-shortcut approach awards a forfeit win to the government contrary to the Federal Rules of Evidence. In effect, the majority has created its own exception to the Rule 803(8) hearsay exception. Under its approach a witness — like Agent Smith — need no longer produce and admit into evidence at trial hearsay records, but instead can wing it by testifying from memory about the critical contents of the hearsay records. That alone is a startling development, but doubly so when the witness’s testimony is offered to prove a required element of a criminal offense.[6] See United States v. Gaudin, 515 U.S. 506, 522-23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (concluding that “[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged. The trial judge’s refusal to allow the jury to pass on the ‘materiality[5] of Gaudin’s false statements [under 18 U.S.C. § 1001] infringed that right.”).
Byrolling out this red carpet, the majority essentially invites the government to forgo, any hassles arising from pesky criminal defendants examining and challenging the content, trustworthiness, and authenticity of records containing hearsay — even *1038 when those records establish elements of charged crimes.[7] Although the majority cites many cases, I see-none among them approving its evidentiary detour.

2. Best-Evidence Rule

On appeal, but not at trial, Iverson argues that Agent’s Smith’s testimony about the FDIC-insurance element also violated the best-evidence rule, Fed.R.Evid. 1002. Appellant’s Opening Br. at 14. Thus, Iverson must show (1) “an error,” (2) that is plain, and that (3) “affect[s] the [defendant’s] substantial rights.” Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). If Iverson establishes all three prongs, an appellate court may exercise its discretion to correct the error only if (4) the error “seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.” United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).
. For the-first prong, I agree with Iverson that Agent Smith’s testimony violated the best-evidence rule (since the government didn’t admit into evidence originals or copies of the two public records). Fed.R.Evid. 1002, 1005. Unquestionably, Agent Smith based his FDIC-insurance testimony on the contents of the two public records. And, obviously, the government did not try to excuse its failure to produce copies of these two public records based on their being unobtainable despite reasonable diligence. See Fed.R.Evid. 1005. Thus, the government could prove the content of the records only by producing them, establishing their admissibility, and ensuring that the copies of the public records were “certified as correct in accordance with Rule 902(4) or is testified to be correct by a witness who has compared [them] with the original[s].”[8] Id. For plain error’s second prong, I would conclude that the requirements of Rule 1005 are well-established, so admitting testimony about the contents of the records without producing and admitting the documents themselves was error that is plain.[9]
*1039 Even so, Iverson would fail the latter two prongs of plain-error review. For the third prong, he cannot show that the best-evidence error was “prejudicial, meaning that there is ‘a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.’” United States v. Algarate-Valencia, 550 F.3d 1238, 1242 (10th Cir.2008) (quoting United States v. Gonzalez-Huerta, 403 F.3d 727, 733 (10th Cir.2005)). Had the district court sustained Iverson’s hearsay objection to Agent Smith’s FDIC-insurance testimony, the government may well have called additional witnesses to establish that Big Horn Bank and JPMorgan Chase were FDIC insured. In addition, for the fourth prong, Iverson cannot show that admitting Agent Smith’s testimony “seriously affeet[ed] the fairness, integrity or public reputation of judicial proceedings.” Olano, 507 U.S. at 736, 113 S.Ct. 1770. Neither in the district court nor on appeal has Iverson even disputed that the two financial institutions were in fact FDIC insured.

3. Sufficiency of the Evidence

I agree with the majority that sufficient evidence would support Iverson’s conviction if Agent Smith’s FDIC testimony had been admissible. But because I believe the hearsay rule should have disallowed this testimony, I cannot vote to affirm Iverson’s conviction.
In this circumstance, the government directs us to Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). There, the Supreme Court reviewed a case in which a jury convicted a defendant (Lockhart) of being a habitual criminal after finding that he had four previous felony convictions. Id. at 36, 109 S.Ct. 285. In a federal habeas proceeding, Lockhart showed that he had previously obtained a pardon for one of the convictions. Id. at 37, 109 S.Ct. 285. Throughout his prosecution, the government mistakenly contended that Lockhart had not been pardoned, but that his sentence had merely been commuted. Id. at 36, 109 S.Ct. 285. In contending that the Double Jeopardy Clause barred a resentencing at which the government could offer proof of an unrelated, additional felony conviction, Lockhart relied on Burks v. United States, 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), which disallows reprosecution when a conviction is reversed for insufficiency of evidence. While recognizing the rule of Burks, the Lockhart Court created an exception to that rule, holding “that in cases such as this, where the evidence offered by the State and admitted by the trial court— whether erroneously or not — would have been sufficient to sustain - a guilty verdict, the Double Jeopardy Clause does not preclude retrial”. Id. at 34, 109 S.Ct. 285.
I agree with the government that a retrial is the proper remedy here since the government’s total evidence — including the erroneously admitted hearsay testimony of Agent Smith — would have sufficed to sustain Iverson’s guilty verdict.[10] Appellee’s Br. at 13. In fact, in the district court, Iverson never even argued that the evidence would be insufficient if the hearsay *1040 testimony were admitted. Nór did Iver-son renew his foundation objection in response -to Agent Smith’s testifying that the two banks were FDIC insured. I agree that if Agent Smith’s FDIC-insurance testimony had been admissible, the .evidence would have sufficed to sustain Iverson’s conviction.[11] Accordingly, I would reverse and remand for retrial in accordance with Lockhart.

APPENDIX

Federal Deposit Insurance Corporation
Bank Information
Big Horn Federal Savings Bank - Active (FDIC # 29637) Insured Since February 28,1936 Data as of: February 21,2016
Big Horn Federal Savings Bank is an active bank
FDIC Certificate#: Headquarters:
Locations:
Established:
Insured:
Effils.Sftffi&iJSissss
Regulated By:
Corporate Website: http://www.blghornfederal.com ConsumejrtoBtetanoe: http://www.helpwlthmybank.gov
Contact the FDIC about:
Big Horn Federal Savings Bank
29S37
33 North 6th Street Graybull, WY 82428 Big Horn County
6 domestic In 1 states,
0 In territories, and 0 In foreign locations January 1,1935
February 20,1936 Savings Association
'Office of the Comptroller of the Currency
Showing 1 to 4 of 4 entries Showjldfy] entries
Date
Event
1/1/1935 9/19/1980 ¡9/19/1991) 7/21/2011
Institution established: Original nameéig Horn Federal'Savings and Loan Association (29637) j Changed name to Big Horn Federal Savings Bank (29837) j
Changed organization type to MUTUAL SAVINGS BANK i
Changed primary regulatory agency from OFFICE OF THRIFT SUPERVISION to I
COMPTROLLER OF THE CURRENCY ¡

. Notably, although certainly implying it, Agent Smith never in fact testified that he saw the certificate, raising the possibility that his testimony was based on a hearsay statement from someone at Big Horn Bank about the hearsay statement contained in the certificate,

. Nowhere did the government ever respond to Iverson’s hearsay objection.

. Indeed, as mentioned, Agent Smith premised his testimony that both banks were FDIC insured by saying .that "in my-research both Big Horn Federal Savings Bank and JPMor-gan Chase are federally insured.” R. vol. III at 86 (emphasis added).

. But these cases do not support the majority’s shortcut approach. Under the rules of evidence, a hearsay statement in a public rec7 ord cannot be admitted into evidence apart from the public- record — thé hearsay state-» ment can’t travel alone. The majority’s cited cases follow this rule.. They allow the hearsay statements if the proponent, admits into evidence the record containing the hearsay. See, e.g., United States v. Arthur, 822 F.2d 60, at *3 (6th Cir.1987) (unpublished table decision) (holding that the certificate was properly admitted under Fed.R.Evid. 803(8)); United States v. Albert, 773 F.2d 386, 389 (1st Cir.1985) (holding that the,district court properly admitted the certificate under the business-records exception, Fed.R.Evid. 803(6)). The rules disallow what the majority approves— witnesses being rewarded for leaving the public records elsewhere for no reason and opting for an empty-handed, “Trust me, here’s what they say.” The rules are not so trusting. See 5 C. Mueller and L. Kirkpatrick, Federal Evidence § 10:32, (4th ed.2013) (providing thát ”[i]n its preferential aspect, Rule 1005 bars ‘other evidence’ of the content of a public document, or a document filed or recorded in public office, if a copy may be had.” (citing Amoco Prod. Co. v. United States, 619 F.2d 1383, 1390 n. 6 (10th Cir.1980))).

. In Stearns v. Paccar, Inc., 986 F.2d 1429, at *5 (10th Cir.1993) (unpublished table decision), we disallowed as inadmissible hearsay a plaintiff’s testimony about what salaries he had seen on W-2 forms of other employees. We required that “to admit evidence regarding the W-2 forms of other ... employees, Plaintiffs were required to submit the W-2 forms to the district court through [the company’s] records custodian," Id.

. Nor do I think taking judicial notice of the FDIC’s webpage would solve the problem. See Maj. Op. at 1021-22; Concurrence at 1028-29, 1032-34. For starters, I believe the FDIC-insurance element concerns an adjudicative fact, not a legislative one. See Fed. R.Evid. 201. Either the banks here had the FDIC insurance or they didn’t — this inquiry is one about "simply the facts of the case." Id. advisory committee’s notes. The FDIC-insurance question is a "fact[] that normally go[es] to the jury in a jury case." Id. I don’t see how the presence of FDIC insurance involves legislative facts — “those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Id. I don’t see FDIC insurance as similar to the primary example of legislative facts given in the advisory notes — the fact determinations underlying the policy of the spousal privilege. Id.

. Even though the government itself doesn’t think it fairly convicted Iverson, the majority overrides the government’s concession and declares otherwise. If the government’s proof here truly satisfies its burden to prove the charged offense, I’m unsure why the majority provides alternative means of proof or chastises the government for its method of proof. Maj. Op. at 1024-25, 1025 n. 2. By lowering the bar, the majority invites the government to do no more next time or any other time.

. Although Rule 1005 is located within Article X of the Federal Rules of Evidence, "Contents of Writings, Recordings, and Photographs,” and concerns "best evidence,” it regulates testimonial hearsay, too. We need look no further than the effect of the rule in our case — because the government didn’t admit a copy of the FDIC public records, Rule 1005 bars hearsay testimony like Agent Smith’s (as "other evidence”). Thus, I’d conclude that Iverson's general hearsay objection was sufficient to reach Rule 1005's testimonial-hearsay bar.

.The majority concludes that any error would not be plain, saying that ”[t]he best-evidence rule does not apply to testimony relating to the existence of a document, as opposed to its contents.” Maj. Op. at 1023 (emphasis in original). To illustrate its point, the majority cites United States v. Beebe, 467 F.2d 222, 225 (10th Cir.1972), where "we held thát the best-evidence rule did not prevent witnesses from testifying 'that their businesses were "licensed. dealers” in firearms rather than producing documents evidencing their actual licensing.' ” Maj. Op. at 1023. On the same point, the majority also cites United States v. Suker, 751 F.2d 477, 483 (2d Cir.1984), where the Second Circuit upheld, over a best-evidence challenge, testimony that a bank was FDIC insured. Maj. Op. at 1023-24. What the majority misses is the context of the testimony in those cases — neither involved witnesses testifying about the contents of the federal-firearms license or FDIC-insurance certificates. Had those two cases involved that sort of testimony — as Agent Smith’s testimony surely did — the best-evidence rule would have barred the testimony as it would here.

. In his reply brief, Iverson doesn't cite Lockhart. He does cite a case that in turn cites Lockhart — United States v. Medina-Copete, 757 F.3d 1092 (10th Cir.2014)—but that case dealt with an entirely different situation; that is, one in which sufficient evidence supported the jury's guilty verdict, but we still worried that inadmissible evidence may have contributed to the verdict. Id. at 1107-08. In addition, Iverson cites United States v. Wheeler, 776 F.3d 736 (10th Cir.2015), a case in which we found sufficient evidence to convict because we couldn’t "say that no rational juror could find Mr. Wheeler’s statements to be true threats.” Id. at 746. In short, Iverson hasn't really addressed the government’s Lockhart argument,

. And, for the same reason as the majority gives, I would conclude that the government’s failure to tie its FDIC-insurance proof to the exact dates of Iverson's charged conduct does not defeat the evidence’s sufficiency. See United States v. Tukes, 442 Fed.Appx. 373, 374 (10th Cir.2011) (unpublished) (upholding a conviction when the bank’s manager said that the bank “is” federally insured after agreeing with "our sister circuits [that] have held that analogous present-tense testimony can be understood to mean that a bank was insured at the time of the offense”).